UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| UNITED ARAB SHIPPING COMPANY S.A.G,<br><br>Plaintiff,<br><br>v.<br><br>UPS SUPPLY CHAIN SOLUTIONS, INC.; UPS OCEAN FREIGHT SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION NO.: |

## COMPLAINT

Plaintiff UNITED ARAB SHIPPING COMPANY S.A.G ("UASC"), and its Complaint and causes of action against Defendants UPS SUPPLY CHAIN SOLUTIONS, INC. ("UPS SUPPLY") and UPS OCEAN FREIGHT SERVICES, INC. ("UPS FREIGHT") (collectively "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1. This is a maritime claim for breach of contract and unpaid freight, detention, demurrage and/or storage costs pursuant to an ocean bill of lading and an ocean carrier's tariff and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1331(1). In the

alternative, it presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 48 U.S.C. §§ 40101 et seq.

2. In the alternative, as there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds jurisdictional amount set by 28 U.S.C. § 1332, the prerequisites for diversity jurisdiction under 28 U.S.C. § 1441(b) are met and this Court is vested with subject matter jurisdiction over this action.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) in that the defendants in this action are corporations with principal places of business in the state where this Court is located.

## **PARTIES**

4. Plaintiff UASC now, and all material times was, a corporation duly organized and existing under the laws of Kuwait with a principal place of business at Airport Road, Shuwaikh, P.O Box 3636, Safat 13037, Kuwait. UASC is, and all material times was, an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

5. Defendant UPS SUPPLY now, and at all material times was, a corporation organized and existing under the laws of Georgia, with its principal place of business at 12380 Morris Road, Alpharetta, GA 30005. UPS SUPPLY is, and at all material times was, a non-vessel owing common carrier ("NVOCC").

6. Defendant UPS FREIGHT now, and at all material times was, a corporation organized and existing under the laws of Georgia, with its principal place of business at 12380 Morris Road, Alpharetta, GA 30005. UPS SUPPLY is, and at all material times was, a non-vessel owing common carrier ("NVOCC").

7. UASC reserves the right to add any additional defendants that may be liable for the acts and/or omissions set forth below.

## FACTUAL BACKGROUND

8. On or about July 1, 2016, UPS SUPPLY booked two containers, being Container Nos. UACU3281906 and IPXU 3578775 (collectively "Containers"), for shipment with UASC for carriage from Barcelona, Spain to New York, New York aboard the vessel M/V *CMA CGM RACINE*.

9. UASC received the Containers and transported the Containers from Barcelona, Spain to New York, New York pursuant to the terms and conditions of UASC Bill of Lading ESVLC136102 dated July 1, 2016 (the "UASC Bill"). The UASC Bill identified UPS SUPPLY as Shipper and UPS FREIGHT as "Consignee".

10. At all material times, UPS SUPPLY was the named shipped under the UASC Bill, and thus qualifies as a "Merchant" under Clause 1 of the UASC Bill. UPS SUPPLY was the entity for whose account the transportation services were provided by UASC, was the party that benefitted from the transportation services

provided by UASC, and was an entity responsible for payment of charges relating to the Containers.

11. At all material times, UPS FREIGHT was the named consignee under the USAC Bill, and thus qualifies as a "Merchant" under Clause 1 of the UASC Bill. UPS FREIGHT was an entity that received and benefitted from the transportation services provided by UASC and was an entity responsible for payment of charges relating to the Containers.

12. The Containers tendered by UPS SUPPLY to UASC for transportation between Spain and the United States on ocean vessels for which freight and other charges were lawfully incurred pursuant to the terms of the UASC Bill and/or applicable tariff(s).

13. UASC's Bill of Lading Standard Terms and Conditions (as applicable to the relevant UASC Bill) provides the following:

> **1. DEFINITIONS**
> …
>
> "**Merchant**" means the Shipper, the Consignee and any Person acting on behalf of such person.
> …
>
> **2. INCORPORATION OF CARRIER'S APPLICABLE TARIFF:**
>
> **2.1.** The terms and conditions of the Carrier's applicable tariff ("the Applicable Tariff"), a copy of which is available from the Carrier or his

agents upon request, are incorporated herein and apply mutatis mutandis. In case of inconsistency, the terms of this sea waybill shall prevail over those of the Applicable Tariff, save as regards freight, demurrage or detention on Containers or vehicles and other charges.

### 13.  MERCHANT'S RESPONSIBILITY

…

**13.3** The Merchant shall indemnify the Carrier against all claims, losses, damages, fines, penalties and expenses arising or resulting from the Shipper's breach of any of the warranties in Clause 13.2 or from any other cause in connection with the Goods for which the Carrier is not responsible including, but not limited to, the inclusion of the particulars of the Goods furnished by the Shipper in any manifest, custom declaration or any other declaration of any nature whatsoever by the Carrier, his servants or agents in reliance upon the adequacy, correctness and completeness of said particulars. **13.4** The Shipper and the Consignee shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this sea waybill and such liability shall include, but not be limited to, court costs, expenses and reasonable attorneys fees incurred in collecting charges and sums due to the Carrier.

### 14.    FREIGHT
…

**14.5** The Shipper and Consignee shall be jointly and severally liable for the payment of all freight, charges, demurrage, detention, dead freight and any other amounts due to the Carrier, together with all court costs, expenses and reasonable attorneys fees incurred in collecting same. **14.6** The Merchant is responsible for ensuring that all payments to the Carrier are actually received by the Carrier. Any Person providing forwarding services in relation to the Goods shall be deemed to be the agent of the Merchant for all purposes and any payment of any sums due to the Carrier by the Merchant to any such Person shall not constitute payment to the Carrier unless and until such sums are actually received by the Carrier.

## 18. MATTERS AFFECTING PERFORMANCE

**18.1** If the Carrier considers at any time that the Carriage or continuance thereof may subject the Vessel or other form of transport or other goods on board the Vessel or other form of transport to any hindrance, risk, danger, delay, difficulty or disadvantage of any kind (other than the inability of the Goods, due to their condition, safely or properly to be carried or carried further) and howsoever arising (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were accepted for Carriage) and which cannot be avoided by the exercise of reasonable endeavours, the Carrier (whether or not the Carriage is commenced) at his sole discretion may, without notice to the Merchant, treat the performance of the contract of Carriage as terminated and place the Goods or any part of them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease and the Goods shall be deemed to have been delivered to and at the risk and expense of the Merchant. The Carrier shall nevertheless be entitled to full freight on the Goods received for Carriage and all charges due under this sea waybill and/or the Applicable Tariff and the Merchant shall pay any additional costs of carriage to and storage at such place or port. **18.2** Without prejudice to the terms of Clause 18.1, the Carrier is at liberty, but under no obligation, to carry the Goods by an alternative route to the intended route, or that which is usual for Goods consigned to the Port of Discharge or Place of Delivery, and/or suspend the Carriage of the Goods and store them ashore or afloat upon the terms of this sea waybill and endeavour to forward them by some other means as soon as possible, but the Carrier makes no representations as to the maximum period of such suspension of Carriage. In either event, the Carrier shall be entitled to recover additional freight and/or charges from the Merchant pursuant to Clause 14.4 notwithstanding the provisions of Clause 17 above.

…

### 23. NOTIFICATION AND DELIVERY

**23.3** The Consignee shall take delivery of the Goods within the time provided in the Applicable Tariff. If the Consignee fails to do so, the Carrier may with or without notice, but subject to its lien, unpack the Goods or part thereof if packed in Containers and store the Goods or part thereof ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery to the Merchant and thereupon all liability whatsoever of the Carrier with respect to the Goods or part thereof shall wholly cease and the cost of such storage (if paid or payable by the Carrier or any agent or Sub-contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier. **23.4** If the Merchant fails to take delivery of the Goods or part thereof within 30 days of delivery becoming due under Clause 23.3 or if, in the opinion of the Carrier, the Goods are likely to deteriorate, decay, become worthless or incur charges, whether for storage or otherwise, in excess of their value, the Carrier may (without prejudice to any other of his rights) without notice and without any responsibility whatsoever sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of any amount due to the Carrier from the Merchant.

14. On or about July 2016, the Containers were discharged in New York, New York and made available for collection by UPS FREIGHT. However, neither UPS FREIGHT nor UPS SUPPLY took delivery of the Containers and the cargo therein. In the days that followed, neither UPS FREIGHT nor its affiliates undertook any additional steps to secure the release of the Containers from the Maher Terminal in New York, New York (the "Terminal").

15. Accordingly, the Containers and cargo therein were left abandoned by UPS FREIGHT and UPS SUPPLY at the Terminal as of July 11, 2016, thenceforth

incurring detention and demurrage charges on a per-day basis, as levied by the Terminal.

16.   UASC, through its attorney, learned and is informed and believes the Containers contained products from UPS SUPPLY's customer Clark-Cutler-McDermott Company ("Clark-Cutler"). UASC is informed and believes Clark-Cutler declared bankruptcy after UPS SUPPLY booked shipment of the Containers. UASC is informed and believes the debtor in possession declared an interest in the goods in the Containers, that UPS SUPPLY declared a security interest in the goods.

17.   UPS SUPPLY, through its attorney, advised UASC that it and its affiliates would be taking no action in respect to securing the release of the Containers. In fact, UPS SUPPLY and its affiliates took no further action to compel release of the Containers or otherwise resolve the continually accruing demurrage charges.

18.   Given the above, UASC secured release of the Containers via agreement with the trustee for the Clark-Cutler bankruptcy estate and arranged for removal of the cargo therein from the Terminal, on or about March 12, 2018.

19.   The total demurrage charges outstanding relating to the abandonment of the Containers from July 11, 2016 to March 12, 2018 totals US$265,215.00.

20. UASC is informed and believes UPS SUPPLY and the Clark-Cutler bankruptcy estate reached a settlement as it relates to UPS SUPPLY's claim, in the amount of US$256,209.63.

21. UASC, through its attorney, submitted a demand letter to UPS SUPPLY for demurrage charges totaling US$265,215.00. To date, UASC has not received any reimbursement or recompense from UPS SUPPLY or UPS FREIGHT.

22. As a result of UPS FREIGHT's and its affiliates failure to take delivery of the Containers and/or provide the required shipping instructions, UASC has incurred damages, liabilities, charges, expenses, fees and costs for storage, detention and demurrage.

23. Under the terms of the UASC Bill and/or applicable tariffs, UPS SUPPLY and UPS FREIGHT are obligated to pay these costs, damages, and expenses due and owing by UPS SUPPLY and UPS FREIGHT to UASC.

24. UASC fully performed all of its obligations under the UASC Bill. UPS SUPPLY and UPS FREIGHT received and benefitted from the transportation services provided by UASC, and are responsible for payment for those various damages, expenses and costs related to the abandonment of the Containers.

## **FIRST CAUSE OF ACTION**
(For Breach of Maritime Contract)

25. UASC refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 24 above.

26. UASC transported and carried the Containers as described herein, at the request and for the benefit of UPS SUPPLY and/or UPS FREIGHT, in accordance with the terms and conditions of the UASC Bill.

27. UASC fully performed all of its obligations under the UASC Bill and carried the Containers from Barcelona, Spain and successfully discharged the Containers in New York, New York.

28. Under the terms of the UASC Bill and applicable law, UPS SUPPLY and UPS FREIGHT were required to provide shipping instructions and/or accept delivery of the Containers within the time provided for in UASC's Bill, and they agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising from or resulting from their failure to provide shipping instructions and/or accept delivery of the Containers.

29. Under the terms of the UASC Bill and applicable law, UPS SUPPLY and UPS FREIGHT agreed to be liable and responsible for any and all detention, demurrage and other charges due under the UASC Bill.

30. UPS SUPPLY and UPS FREIGHT breached the terms of the UASC Bill by failing to provide shipping instructions and/or accept delivery of the Containers,

and by failing to pay UASC the damages, liabilities, detention, demurrage, and other related expenses and fees arising from UPS SUPPLY's and UPS FREIGHT's breach or breaches of the UASC Bill.

31.   As a proximate cause of UPS SUPPLY's and UPS FREIGHT's breach or breaches of the UASC Bill, breach of warranty, and the matters set forth herein, UASC has incurred, and UPS SUPPLY and UPS FREIGHT are liable to UASC for, damages in the amount exceeding US$265,215.00.

32.   Under the terms of the UASC Bill, UASC is entitled to recover from UPS SUPPLY and UPS FREIGHT attorneys' fees and costs incurred as result of UPS SUPPLY's and UPS FREIGHT's breach or breaches and/or incurred in collecting the outstanding amounts from UPS SUPPLY and UPS FREIGHT.

**SECOND CAUSE OF ACTION**
(Money Due Under Marine Tariff)

33.   UASC refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 32 above.

34.   UASC transported and carried the Containers as described herein, at the request and for the benefit of UPS SUPPLY and/or UPS FREIGHT, and in accordance with the terms and conditions of the UASC Bill and subject to the rates and charges in its tariffs on file with the Federal Maritime Commission.

35.     Under the said tariffs, UASC is required to collect and is entitled to recover from Defendants, and Defendants are required to pay UASC, all unpaid demurrage, detention, port and terminal storage charges, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Containers, as well as UPS SUPPLY's and UPS FREIGHT's failure to provide required shipping instructions and/or accept delivery of the Containers.

36.     Despite demand for payment, UPS SUPPLY and UPS FREIGHT have failed to pay UASC amounts due under the tariffs and tariff compensation is due, owing and unpaid to UASC from Defendants in an amount exceeding US$265,215.00 together with attorneys' fees, costs and expenses incurred in collecting said charges.

## THIRD CAUSE OF ACTION
(Negligence)

37.     UASC refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 36 above.

38.     At all material times herein, UPS SUPPLY and UPS FREIGHT owed UASC a legal duty to exercise due care to provide required shipping instructions and/or to accept delivery of the Containers in New York, NY. The legal duty of Defendants to UASC arose because UPS SUPPLY and UPS FREIGHT are parties to the UASC Bill.  The legal duty of Defendants to UASC also arose independently

of the aforesaid bills of lading because of many factors, including, without limitation, the foreseeability of harm to UASC from their acts and omissions, the degree of certainty that UASC suffered injuries, the closeness of the connection between Defendants' conduct and the injury suffered.

39. Defendants breached their duty of care by, inter alia, failing to provide required shipping instructions and/or accept delivery of the Containers in New York, New York or otherwise arranging for the Containers' delivery.

40. As a proximate result of the negligence of Defendants, UASC has incurred, and Defendants are liable to UASC for, additional freight, storage, demurrage, detention, liabilities, charges, penalties, costs, expenses and fees in an amount exceeding US$265,215.00, plus any additional damages and costs as they continue to accrue.

## PRAYER

WHEREFORE, Plaintiff UASC prays for judgment against UPS SUPPLY and UPS FREIGHT as follows:

1. That the Court order judgment in favor of UASC and against UPS SUPPLY and UPS FREIGHT jointly and severally in an amount not less than US$265,215.00 for any and all freight, storage, demurrage, detention, liabilities, charges, penalties, other costs, expenses and fees caused by UPS SUPPLY's and/or

UPS FREIGHT's breach or breaches of the UASC Bill and/or applicable tariff and/or negligence, for all amounts due under UASC's tariffs, as well any additional damages and costs that continue to accrue at an amount to be established at trial;

2. That the Court award UASC its attorney's fees, costs and expenses incurred as a result of UPS SUPPLY's and/or UPS FREIGHT's breach or breaches and/or in collecting the sums due from UPS SUPPLY and/or UPS FREIGHT;

3. That the Court award UASC interest on all of the above as well as its costs of suit; and

4. That the Court award such other and further relief as the Court deems just and proper.

Dated this 20th day of September, 2019.

                                    **GORDON REES SCULLY MANSUKHANI, LLP**

                                    */s/ Chad A. Shultz*
                                    Chad A. Shultz
                                    Georgia Bar No. 644440
                                    cshultz@grsm.com
                                    55 Ivan Allen Jr. Blvd., NW, Suite 750
                                    Atlanta, Georgia 30308
                                    Telephone: (404) 869-9054
                                    Fax: (678) 389-8475
                                    *Attorney for United Arab Shipping Company S.A.G*